IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JENNIFER CLEM,                              *
                                            *
            Plaintiff,                      *
                                            *
    vs.                                     *        Civil Action No. ADC-21-1633
                                            *
STATE OF MARYLAND,                          *
                                            *
            Defendant.                      *
                                            *
    *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

## MEMORANDUM OPINION

The State of Maryland ("Defendant") moves this Court for summary judgment on the claim

remaining in Jennifer Clem's ("Plaintiff") Amended Complaint. ECF Nos. 12, 35. After

considering Defendant's Motion and the responses thereto (ECF Nos. 35, 36, 39), the Court finds

that no hearing is necessary.[1] Loc.R. 105.6 (D.Md. 2021). For the reasons stated herein, the

Defendant's motion for summary judgment is GRANTED.

### FACTUAL AND PROCEDURAL BACKGROUND[2]

Plaintiff was hired by the Maryland Judiciary as a District Court Commissioner in District

12, serving Allegany County, in October 2017. ECF No. 12 at ¶ 7; ECF No. 36-2 at 8. District

Court Commissioners act as a "first contact point" in the Maryland Judiciary by accepting

applications for statements of charges, conducting initial appearances, accepting bail bonds,

---

[1] On August 3, 2021, this case was assigned to United States Magistrate Judge A. David
Copperthite for all proceedings pursuant to Standing Order 2019-07. ECF No. 8. All parties
voluntarily consented in accordance with 28 U.S.C. § 636(c). ECF No. 11.

[2] To the extent that this factual background addresses disputed facts, those facts are presented in
the light most favorable to Plaintiff as the non-movant. *See Pittman v. Nelms*, 87 F.3d 116, 119
(4th Cir. 1996) ("[W]ith any motion for summary judgment, [a court] must view the evidence in
the light most favorable to the nonmovant.").

issuing releases from confinement, determining pre-trial release conditions, and issuing temporary protective orders. ECF No. 36-2 at 11; Md. Code, Cts. & Jud. Proc., § 2-607.

Because of their judicial responsibilities, District Court Commissioners are bound by the Maryland Code of Conduct for Judicial Appointees, Md. Rule 18-200.2(a), which provides, among other things, that judicial appointees shall "comply with the law," "shall avoid conduct that would create in reasonable minds a perception of impropriety," and "shall uphold and apply the law and shall perform all duties of the position impartially and fairly," Md. Rule 18-201.1; Md. Rule 18-201.2(b); Md. Rule 18-202.2(a). To ensure impartiality and to avoid the perception of impropriety, Maryland Rule 18-202.11(a) requires that judicial appointees be disqualified from any proceedings in which their "impartiality might reasonably be questioned," including when they have "personal knowledge of facts that are in dispute in the proceeding."

During her tenure as a District Court Commissioner, Plaintiff twice breached her duty under the Maryland Code of Conduct for Judicial Appointees to "comply with the law" by violating the Transportation Article of the Maryland Code. ECF No. 35-2 at 9-11. Specifically, in August 2018 Plaintiff's supervisor, Commissioner Christopher Nann, was informed that Plaintiff "had been operating a motor vehicle for months with expired tags and registration." ECF No. 35-2 at 9. During his investigation of the matter, Commissioner Nann also discovered that Plaintiff did not have a Maryland driver's license. ECF No. 35-2 at 3. Although Plaintiff remedied these issues, she was again reprimanded for "repeatedly operat[ing] a motor vehicle with expired West Virginia tags" in October 2019. ECF No. 35-2 at 3-4, 10-11; ECF No. 36-2 at 32. Plaintiff was issued a written reprimand for this second violation which stated that subsequent violations of the Maryland Code of Conduct for Judicial Appointees "will result in future disciplinary action or

adverse action up to suspension or removal from [her] position as a District Court Commissioner." ECF No. 35-3.

In or around July 2020, Plaintiff requested leave under the Family and Medical Leave Act ("FMLA") to take care of her father "who was very sick[.]" ECF No. 12 at ¶ 9. While most of Plaintiff's leave requests were granted, she asserts that Defendant denied her request to take FMLA leave from August 12-14, 2020. *Id.* at ¶¶ 13-14. Several months later, on October 15, 2020, Plaintiff informed Commissioner Nann, that her "father had almost died the previous night while [she] was working and that [she] was going to be taking some time off under [her] FMLA to care for [her] father." ECF No. 36-1 at 2.

On the same day that Plaintiff requested additional FMLA leave, Commissioner Nann, while conducting a standard public defender eligibility review, discovered a charging document in which Plaintiff was "both the alleged victim and the issuing commissioner."[3] ECF No. 35-2 at 4; ECF No. 36-2 at 24-25. The "Statement of Charges" issued by Plaintiff on July 13, 2020, alleged that a suspect made "a false statement of the commission of a crime to [Plaintiff] . . . knowing the same to be false and with the intent that the said official take action in connection with such statement." ECF No. 35-2 at 14. In Commissioner Nann's view, Plaintiff's decision to issue this case "not only create[ed] an issue from a probable cause standpoint, but it also clearly violat[ed] the Maryland Code of Conduct for Judicial Appointees[.]" ECF No. 35-2 at 11. Accordingly, he

---

[3] In his deposition, Commissioner Nann explained that he regularly conducts "public defender eligibility review[s]" during which he "pick[s] out files at random" and goes "through each individual financial calculation to make sure that the commissioner made the correct eligibility finding[.]" ECF No. 36-2 at 25. During these reviews, Commissioner Nann also ensures that "all the necessary information was entered in[.]" *Id.*

asked that Plaintiff provide a "detailed, written email response" explaining how she made her probable cause finding in the case in question.[4] ECF No. 35-4 at 8; ECF No. 36-2 at 53-55.

The next day, Commissioner Nann authored a memorandum to District 12's Administrative Judge, Judge Jack Price, recommending that Plaintiff be terminated for violations of the Maryland Code of Conduct for Judicial Appointees. ECF No. 35-2 at 5, 9. This memorandum recounted all of Plaintiff's violations of the Code of Conduct for Judicial Appointees and concluded that Plaintiff's "repeated pattern of conduct . . . portrays a negative reflection of not only herself, but that of the Maryland Judiciary."[5] ECF No. 35-2 at 9-12. It did not, however, mention that Plaintiff had used, or intended to use, FMLA leave. *Id.* Judge Price concurred with Commissioner Nann's recommendation to terminate Plaintiff. *Id.* at 5-6. The matter was subsequently presented to the Chief Judge of the District Court of Maryland, Judge John Morrissey,[6] who authorized Plaintiff's separation from employment with the caveat that she be offered a chance to resign in lieu of termination. *Id.* Thereafter, in the late afternoon of October 16, Plaintiff was informed that she was being separated from employment with the Maryland Judiciary. *Id.* at 6. She chose not to resign and was terminated on October 17, 2020. *Id.*

---

[4] Later the same day, Plaintiff emailed Commissioner Nann explaining how she issued the underlying statement of charges. ECF No. 35-4 at 7. She explained, among other things, that the Sergeant stated in his application for charges that "[the suspect's] sworn statement *to this Commissioner* was not true based on [the suspect] providing a different and opposite report to him earlier that day[.]" *Id.* (emphasis added).

[5] In addition to the Code of Conduct violations already discussed, the memorandum recounted a July 2019 incident in which "numerous Law Enforcement Administrative Officials" informed Commissioner Nann that "some of their patrol officers had experienced a negative attitude and bias towards them by" Plaintiff. ECF No. 35-2 at 10. However, because Commissioner Nann was not able to verify these allegations, ECF No. 36-2 at 34, the Court will not consider them in this opinion.

[6] As discussed below, under Maryland Code, Courts and Judicial Proceedings Article, § 2-607(b)(2) district court commissioners "hold office at the pleasure of the Chief Judge of the District Court[.]"

Plaintiff filed suit in this Court on July 2, 2021. ECF No. 1. On August 27, 2021, she filed an Amended Complaint alleging that Defendant retaliated against her for utilizing FMLA leave and discriminated against her on the basis of her sex. ECF No. 12. On December 28, 2021, this Court granted in part and denied in part Defendant's motion to dismiss or in the alternative for summary judgment. ECF No. 24. Construing the motion as a motion to dismiss, the Court found that Plaintiff had asserted facts sufficient to support an FMLA retaliation or discrimination[7] claim but had not properly pled a Title VII sex discrimination claim. *Id.* at 5-11. On August 8, 2022, Defendant filed a Motion for Summary Judgment. ECF No. 35. Plaintiff responded in opposition on August 30, 2022, and Defendant replied on September 21, 2022. ECF Nos. 36, 39.

## Discussion

### A. Standard of Review

Pursuant to Rule 56, a movant is entitled to summary judgment where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(a). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." (emphasis in original)). An issue of fact is material if, under the substantive law of the case, resolution of the factual dispute could affect the outcome. *Anderson*, 477 U.S. at 248. There is a genuine issue as to material fact "if the evidence is such that

---

[7] "The provision of the FMLA that prohibits 'discrimination' is generally analyzed as a prohibition against retaliation for complaints about interferences with an employee's attempt to exercise his or her rights under the FMLA." *Sharma v. Howard Cnty.*, No. 12-cv-2269-JKB, 2013 WL 530948, at *5 n.2 (Feb. 12, 2013). Accordingly, in this Opinion I refer to Plaintiff's claim as an FMLA retaliation claim.

a reasonable jury could return a verdict for the nonmoving party." *Id. See Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012). On the other hand, if after the Court has drawn all reasonable inferences in favor of the nonmoving party, and "the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

The party seeking summary judgment bears the initial burden of establishing either that no genuine issue of material fact exists or that a material fact essential to the non-movant's claim is absent. *Celotex Corp.*, 477 U.S. at 322-24. Once the movant has met its burden, the onus is on the non-movant to establish that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In order to meet this burden, the non-movant "may not rest upon the mere allegations or denials of [its] pleadings," but must instead "set forth specific facts showing that there is a genuine issue for trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting Fed.R.Civ.P. 56(e)).

**B. Defendant's Motion**

Defendant first argues that Plaintiff cannot establish a prima facie case of retaliation. ECF No. 35-1 at 9-10. While conceding that Plaintiff engaged in a protected activity and suffered an adverse employment action, Defendant asserts that Plaintiff has not established "a causal connection between [her] FMLA leave and her termination." *Id.* at 10. Plaintiff responds by arguing that the temporal proximity between her request for FMLA leave and termination supports an inference that her termination violated the FMLA. ECF No. 36 at 6-7. While acknowledging that this temporal connection does not conclusively establish a causal connection, Plaintiff avers that "it certainly satisfies the less onerous burden of making a prima facie case of causality." *Id.* at 7 (quoting *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989)).

Even if Plaintiff can make out a prima facie case of retaliation, Defendant asserts that there is no dispute that Plaintiff "violated the Code of Conduct for Judicial Appointees" and that such a violation "is a legitimate non-discriminatory reason for her termination." ECF No. 35-1 at 15. Plaintiff, Defendant avers, has proffered "no evidence to support an inference that the reason for her termination was any other than her violation of the Code of Conduct[.]" *Id.* at 16. Conversely, Plaintiff asserts that Defendant's stated reason for terminating her is questionable. ECF No. 36 at 8. While she does not dispute that she failed to properly register her car or obtain a Maryland driver's license, Plaintiff asserts that she resolved these matters "in a timely fashion with no need for any additional follow-up or disciplinary action." *Id.* She also argues that two co-workers and one supervisor informed her that, so long as she was not listed as a witness, she was permitted to issue cases in which she was identified as a "victim." *Id.* at 9. Therefore, Plaintiff contends that summary judgment is inappropriate. *Id.* at 11.

Under the FMLA, eligible employees are "entitled to a total of 12 workweeks of leave during any 12-month period . . . [i]n order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition." 29 U.S.C. § 2612(a)(1)(C). The statute also "provides proscriptive rights 'that protect employees from discrimination or retaliation for exercising their substantive rights under the FMLA.'" *Vannoy v. Fed. Rsrv. Bank of Richmond*, 827 F.3d 296, 304 (4th Cir. 2016) (quoting *Dotson v. Pfizer*, 558 F.3d 284, 294 (4th Cir. 2009)); *see also Hannah P. v. Coats*, 916 F.3d 327, 347 (4th Cir. 2019) ("The FMLA prohibits employers from discriminating against an employee for exercising her FMLA rights."). Under the FMLA employers are not, however, prevented "from terminating an employee for poor performance, misconduct, or insubordinate behavior." *Vannoy*, 827 F.3d at 304.

7

The United States Court of Appeals for the Fourth Circuit has explained that FMLA retaliation claims "are analogous to discrimination claims brought under Title VII." *Laing v. Fed. Exp. Corp.*, 703 F.3d 713, 717 (4th Cir. 2013). These claims may, accordingly, "rest on circumstantial evidence evaluated under the burden shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Vannoy*, 827 F.3d at 304. Under this framework, a Plaintiff claiming FMLA retaliation "must first make a prima facie showing 'that he engaged in protected activity, that the employer took adverse action against him, and that the adverse action was causally connected to the plaintiff's protected activity.'" *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 551 (4th Cir. 2006) (quoting *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 301 (4th Cir. 1998)). "If the plaintiff establishes a prima facie case, the burden shifts to the defendant to provide a legitimate, nonretaliatory reason for taking the employment action at issue." *Hannah P.*, 916 F.3d at 347. If this showing is made, "the burden shifts back to the plaintiff to demonstrate that the defendant's proffered reason is pretextual." *Id.*

### 1. The Prima Facie Case

In the instant case, neither party disputes that Plaintiff engaged in protected activity (requesting and taking FMLA leave) and that she experienced an adverse employment action (termination). ECF No. 35-1 at 10. Accordingly, to make out a prima facie case of FMLA retaliation Plaintiff need only show that her termination was causally connected to her FMLA leave. The United States Court of Appeals for the Fourth Circuit has explained that "for purposes of establishing a prima facie case, close temporal proximity between activity protected by the statute and an adverse employment action may suffice to demonstrate causation." *Waag v. Sotera Def. Sol., Inc.*, 857 F.3d 179, 192 (4th Cir. 2017). In *Yashenko v. Harrah's NC Casino Co., LLC*, the plaintiff was terminated while utilizing FMLA leave. 446 F.3d 541, 545 (4th Cir. 2006). In

making out a prima facie case of FMLA retaliation, he offered evidence "of the temporal proximity between his absence and the elimination of his job." *Id.* at 551. The Court held that this evidence was sufficient to establish the causality requirement of a prima facie case, explaining that "[w]hile evidence as to the closeness in time 'far from conclusively establishes the requisite causal connection, it certainly satisfies the less onerous burden of making a prima facie case of causality." *Id.* (citation omitted); *see also King v. Rumsfeld*, 328 F.3d 145, 151 n.5 (4th Cir. 2003) (noting that a gap of two months and two days between protected activity and an adverse action did "not undercut the inference of causation enough to render [the plaintiff's] prima facie claim unsuccessful."). As in *Yashenko*, here, Plaintiff has offered evidence that she was terminated while actively engaging in the FMLA leave process. ECF No. 36-1 at 2. Indeed, her affidavit alleges that she advised Commissioner Nann that she "was going to be taking some time off under [her] FMLA to care for her father" approximately two days before she was ultimately separated from employment. *Id.*; ECF No. 35-2 at 1-2. This temporal link establishes a causal connection between Plaintiff's engagement in a protected activity and her termination. Accordingly, I find that Plaintiff has made out a prima facie case of FMLA retaliation.

2.   The Non-Retaliatory Reason for Termination

The burden then shifts to Defendant "to show that its purportedly retaliatory action was in fact the result of a legitimate non-retaliatory reason." *Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 250 (4th Cir. 2015). "In reviewing whether an employer's decision is unlawful, the Court's task is not 'to decide whether the reason [for terminating employment] was wise, fair, or even correct, ultimately, so long as it truly was the reason for [the decision]." *Mercer v. Arc of Prince George's Cnty.*, 532 F.App'x 392, 399 (4th Cir. 2013) (quoting *Laing*, 703 F.3d at 722). "To meet its burden of offering a legitimate non-discriminatory reason for the plaintiff's

termination, a defendant need only have had an honest belief that the alleged reason or misconduct occurred." *Dasilva v. Educ. Affiliates, Inc.*, No. CCB-15-541, 2015 WL 9582975, at \*4 (D.Md. December 31, 2015).

Here, Defendant has proffered evidence that, during her tenure as a District Court Commissioner, Plaintiff violated the Code of Conduct for Judicial Appointees. ECF No. 35-2 at 9-12. While Plaintiff disputes the circumstances under which some of the violations occurred, she does not contest that she violated the Code of Conduct by failing to obtain a Maryland driver's license, operating a vehicle with expired tags, and issuing a case in which she was disqualified. ECF No. 36-1 at 8-9. Because District Court Commissioners are bound under Maryland Rule 18-200.2 to adhere to the Code of Conduct for Judicial Appointees, these "repeated ethical violations" constitute a legitimate non-retaliatory reason to terminate Plaintiff. ECF No. 35-2 at 6.

### 3. Pretext

To defeat summary judgment, the burden then shifts back to Plaintiff to rebut Defendant's non-retaliatory reason "by showing that the proffered reason is, more likely than not, a pretext for discrimination." *Sherif v. Univ. of Md. Med. Ctr.*, 127 F.Supp.3d 470, 482 (D.Md. 2015). She can do so by "show[ing] that she was fired under suspicious circumstances and that her employer lied about its reasons for firing her," or by offering "sufficient evidence to find that the employer's asserted justification is false[.]" *Foster*, 787 F.3d at 250 (quoting *Reeves v. Sanderson Plumbing Prods, Inc.*, 530 U.S. 133, 148 (2000)). *See also Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007) (explaining that plaintiffs can carry their burden "by showing that the employer's proffered explanation is unworthy of credence.") (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)). However, "a plaintiff's own assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate nondiscriminatory reasons

for an adverse employment action." *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 281 (4th Cir. 2000) (quoting *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 456 (4th Cir. 1989)).

Here, Defendant has offered a great deal of evidence explaining that Plaintiff was terminated for violating the Code of Conduct for Judicial Appointees by failing to "comply with the law" and failing to properly "disqualify" herself from a case. Md. Rule 18-201.1; Md. Rule 18-202.11. In support of her pretext claim, Plaintiff argues that her Code of Conduct violations were "minor," "resolved in a timely fashion" and "more nuanced" than they appeared. [8] ECF No. 36 at 8-9. She has not, however, provided evidence that similar violations of the Code of Conduct were excused or that other offending commissioners were not similarly disciplined. Indeed, in her depositions Plaintiff agreed (1) that it would be a violation of the Code of Conduct for a commissioner to issue charges in which she was a witness and (2) that violations of the Code of Conduct constitute legitimate nondiscriminatory reasons for termination. ECF No. 35-6 at 3-4.

Plaintiff also stresses, as proof of pretext, that her termination occurred less than two days after she engaged in a protected activity. ECF No. 36 at 6-8. While this temporal proximity is sufficient to establish a prima facie causal connection it cannot, standing alone, show that Defendant's non-retaliatory reason for separating Plaintiff from employment is mere pretext. Indeed, the temporal link here is compromised as Plaintiff was first reprimanded for violating the Code of Conduct for Judicial Appointees approximately one year prior to her termination. 35-3 at 2. In this written reprimand, dated October 18, 2019, Plaintiff was advised that further violations of the Code of Conduct "will result in future disciplinary action or adverse action up to suspension

---

[8] One of the nuances, Plaintiff asserts, is that "she asked 3 commissioners if she could issue [a] case, despite being identified as the 'victim.'" ECF No. 36 at 9. While these consultations may speak to Plaintiff's state of mind or intent, they do not ultimately change the fact that Plaintiff violated Maryland Rule 18-202.11(a) by issuing a case in which her "impartiality might be reasonably questioned[.]"

or removal from [her] position as a District Court Commissioner." ECF No. 35-3 at 2-3. *See Francis v. Booze Allen & Hamilton, Inc.*, 452 F.3d 299, 309 (4th Cir. 2006) ("Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." (quoting *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d. Cir. 2001))). Commissioner Nann's actions in initiating Plaintiff's termination can also be explained by non-invidious motivations, as he first requested that Plaintiff be terminated just one day after discovering the case in which Plaintiff was, under the Maryland rules, disqualified. *See James v. Verizon*, 792 F.Supp.2d 861, 868 (D.Md. 2011) ("[T]he temporal proximity between [p]laintiff's leave status and her termination is fully accounted for by non-invidious motivations and circumstances, and [p]laintiff has presented no facts other than temporal proximity upon which a jury could infer that her . . . FMLA request played any role whatsoever in her termination.").

Plaintiff has also, importantly, failed to supply evidence that the ultimate decision maker, Chief Judge John Morrissey, knew of her FMLA status when he decided to terminate her employment. ECF No. 35-2 at 6; ECF No. 39 at 10-11. In his memorandum requesting that Plaintiff be terminated, Commissioner Nann did not advise Judge Price or Chief Judge Morrissey of Plaintiff's FMLA status as he "didn't think it was relevant" and "felt it was not necessary . . . because that had no bearing on the issue that was discovered on October 15, 2020."[9] ECF No. 36-2 at 73. Although Commissioner Nann wrote the memorandum requesting that Plaintiff be terminated, Maryland Code, Courts and Judicial Proceedings Article, § 2-607(b)(2) provides that

---

[9] Although Plaintiff does not dispute that Chief Judge Morrissey was not informed of her FMLA status, she argues in her response that "[i]t appears that [Commissioner] Nann intentionally failed to disclose [her] FMLA status . . . to bolster his recommendation for termination." ECF No. 36 at 8 n.1. The Court agrees with Commissioner Nann that Plaintiff's FMLA status was not related or relevant to her alleged violations of the Code of Conduct for Judicial Appointees.

commissioners "shall hold office at the pleasure of the Chief Judge of the District Court[.]" The record is, therefore, clear that the ultimate decision maker, Chief Judge Morrissey, was unaware of Plaintiff's FMLA status when he authorized her resignation and/or termination.[10] ECF No. 36-2 at 75-76.

Construing the facts in the light most favorable to the Plaintiff, there are no genuine disputes of material fact that have been raised. On this record, a reasonable juror could not conclude that Defendant's stated reason for terminating Plaintiff, namely "repeated ethical violations," was pretextual. ECF No. 35-2 at 6. Because Plaintiff has not submitted evidence to show that Defendant's proffered reason for terminating her employment "is unworthy of credence," *Holland*, 487 F.3d at 214, I find that Defendant is entitled to summary judgment. As the United States Court of Appeals for the Fourth Circuit has explained, it is not the Court's role "to second-guess [an entity's] legitimate, non-discriminatory bases for terminating [employees] where there is nothing in the record . . . evincing retaliatory animus." *Vannoy*, 827 F.3d 296, 305 (4th Cir. 2016).

<h2 style="text-align:center">CONCLUSION</h2>

For the reasons set forth in this Memorandum Opinion, Defendant's Motion (ECF No. 35) is GRANTED. A separate Order will follow.

Date: 26 October 2022

A. David Copperthite
United States Magistrate Judge

---

[10] While it is true that "[a] company may be liable . . . for the actions of an employee who lacks the authority to make a final employment decision, if the decision-makers 'merely rubber-stamped' the decision of the employee who lacked formal authority," *Taylor v. Rite Aid Corp.*, 993 F.Supp.2d 551, 569 n.38 (D.Md. 2014), Plaintiff here has not asserted that Chief Judge Morrissey merely rubber-stamped her termination.